STATE of Missouri,
Plaintiff-Respondent,

v.

Russell Otis KING, Defendant-Appellant.

No. KCD 28397.

Missouri Court of Appeals,
Kansas City District.

April 3, 1978.

Michael E. Dailey, Kansas City, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Philip M. Koppe, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Before SOMERVILLE, P. J., and DIXON and TURNAGE, JJ.

DIXON, Judge.

Defendant appeals a judgment and conviction of second degree murder and a jury-imposed sentence of one hundred years.

Although the sufficiency of the evidence is not raised, the nature of the points relied upon require a rather complete statement of the evidence. The defendant and one Teresa Fisher, a one-time girlfriend of the defendant, had been going together during 1974, but their relationship had ceased in December of 1974. During the time that the defendant and Teresa Fisher were going together, Teresa had also been visited by the victim Forbush. This had caused difficulties between Forbush and the defendant and, in June of 1974, the defendant King had been shot in the shoulder by the victim Forbush. On the 21st of January, 1974, the victim had driven Teresa Fisher to her grandmother's residence. Teresa Fisher got out of the car and prepared to go inside the house. While she was on the porch, she saw the defendant approach the victim's car on foot carrying a gun. She then went inside the residence but ran out after she heard a gunshot. She observed the defendant pointing the gun at the victim who was in the car. She ran inside the house to call the police. When she went in the house the second time, she heard more shots, returned to the front of the house and looked out, observing the defendant with his hand inside of the window of the car trying to open the door. The victim was then not in sight, but not outside the vehicle. The police arriving in response to a dispatch observed a man fleeing the scene, subsequently identified as the defendant, and apprehended him after a chase. Upon being advised of his rights, the defendant admitted having shot the victim four times before dragging him from the vehicle and stomping on his head. When making his statement to the police, the defendant said, "I hope I killed the motherfucker." Another policeman who arrived at the scene observed the victim outside the car and next to the curb and identified a photograph of the victim's body in its position when he arrived.

The Coroner stated the victim had received four gunshot wounds, one in the front of the body and three in the back, that his jaw had been fractured and several teeth had been knocked out. She identified several photographs which showed the location of the bullet wounds and the condition of the face of the victim. Another detective who questioned the defendant testified that the defendant admitted shooting the victim and also stated that he hoped Forbush would die. When informed that the victim had died, the officer testified that he made the following response:

"He said, 'Good,' and he grabbed my hand and said, 'I want to shake hands, I'll be

able to sleep now, I swore I wouldn't sleep until I killed the motherfucker. I want to see him in a box. I just want to be out in time to go to his funeral.'" The defendant also admitted to this officer that he had dragged the victim from the car and kicked him, further admitting that he had not seen the victim have a gun when the shots were fired by the defendant.

After the State rested, the defendant took the stand and testified. After asserting the wounding inflicted by the victim in June of 1974, he testified to a constant fear of the victim and claimed that the victim had threatened to kill him on the same day the shooting occurred. This supposedly occurred at the home of Teresa Fisher. He claimed that he went to Teresa Fisher's grandmother's residence in response to a call from Teresa, taking his gun with him out of fear of the victim. He testified that he saw Forbush pull up in his own car and make a movement which he took to be an act of reaching for a gun, so he shot the victim once, that the victim then got out of the car and charged him, at which time he shot the victim several more times. According to the defendant, the victim then "fell" on the defendant who pushed him off and ran away. The defendant denied the statements which the officers had testified he made and denied dragging the victim from the car or kicking the victim. There was evidence before the jury that both the victim and the defendant had a reputation for being violent and for carrying guns.

The defendant asserts three points of error. The first point of error contends that the photographs depicting the position of the body in the street, the facial wounds, and the bullet wounds, were improperly admitted and submitted for jury viewing because of the inflammatory and prejudicial nature of the photographs. Defendant's second point asserts that the court's rulings with respect to the photographs forced the defendant to testify and incriminate himself and, third, that the jury was not a fair and accurate cross section of society because the jury selection system automatically excluded women from jury service.

On the first issue raised, the jury viewing of the photographs, there is no error. The photographs in question were gory and gruesome, but that fact alone will not preclude a jury view of the photographs. "It has generally been held that even though a photograph may be inflammatory it is admissible if it tends to prove any material element of the State's case; this includes the issues of identity, condition and location of the body, nature or location of wounds, and the cause of death; and, generally, if the photograph corroborates the oral testimony of the state or refutes defense testimony it is admissible." *State v. Jackson,* 499 S.W.2d 467, 472 (Mo.1973); *State v. Stewart,* 529 S.W.2d 182, 184 (Mo. App.1975). Furthermore, a photograph is not inadmissible simply because witnesses have testified to the matters shown by the photograph. *State v. Brown,* 524 S.W.2d 188 (Mo.App.1975). The photographs in this case depict the location of the bullet wounds inflicted upon the victim's body and the condition of the facial area of the body, as well as the position of the body at the scene. They are thus not repetitive and do not unduly emphasize the gory details of the body or the scene by such repetition, but each bears upon an issue to be decided by the jury. The defendant claimed to have shot the victim only once while the victim was seated in the car and the three additional times when the victim charged at him. The photograph of the wounds refutes this contention because of the fact that the one wound was in the front and three wounds showed an entry in the back of the victim. The photograph also corroborates the testimony of Teresa Fisher that the shots were all fired while the victim was still in the car.

The photograph of the mouth area of the victim corroborates the Coroner's testimony with respect to the injuries and the admission of the defendant to the police about the stomping on the face of the victim. It also refutes the claim by the defendant that the victim fell on top of him. The exhibit showing the location of the body is clearly admissible to corroborate the State's theory

of the case and to refute the defendant's claim when it is considered in connection with other photographs which showed that the seat of the car was bloodstained indicating that the victim was removed from the car after he was shot. The photographs were properly admitted by the trial judge and viewed by the jury.

■ Defendant's second point was not raised in the motion for new trial, nor at the trial, and this court is asked specifically to review the question as plain error. The substance of the defendant's claim of error is that because of the procedure at the time the photographs were offered in evidence, the trial court compelled the defendant to testify, thereby offending his privilege against self-incrimination. Defendant characterizes the proceedings as one in which the trial court bargained with the defendant to testify to keep the jury from viewing the photographs. Aside from the citation of cases involving wellknown principles of constitutional law concerning the right of defendant not to testify and the voluntariness of confessions, defendant does not cite any authority factually in point, nor does the defendant in his brief assert the factual basis for his conclusionary claim that he was coerced by the court into testifying. Only because the defendant's point and argument suggest a serious claim of error, even though not supported by any transcript reference or factual argument in the brief, some relatively lengthy explanation of the procedures followed by the trial court should be recited. It is first to be noted that the defendant's statement of fact characterizes the action of the trial court as being coercive in requiring the defendant to testify, but that is not factually correct on the basis of this record.

The photographs proved certain essentials of the State's case, as well as substantiating and corroborating the testimony offered in the case-in-chief. As previously noted, the photographs were admissible and could have been viewed by the jury upon identification. However, at that time, the defendant objected to the jury viewing the pictures and argued that they were inflammatory. The defendant indicated that self-defense would be an issue in the case. The court, when the issue of the admission of the photographs was argued, conceded the gory nature of the photographs. The court was aware that the defendant in a previous trial had admitted firing only one shot and denied kicking the victim in the head and face. Defendant's counsel then attempted to admit the physical facts of the victim's injury, but not the nature of the acts of the defendant. The State rejected the offer of a limited admission and insisted it was entitled to prove its case. Defense offered to stipulate, but this was refused by the State. The court then ruled that the photographs were admitted in evidence but were not to be shown to the jury unless the issues as to the nature and extent of the victim's wound remained viable at the conclusion of the case. This ruling was more favorable to the defendant than was necessary. At that stage of the case, the photographs were admissible as indicated above in connection with the ruling of defendant's first point.

The following colloquy concluded the conference out of the hearing of the jury:

"THE COURT: And I'll withhold giving them to the jury at this time on the recommendation of Mr. Teasdale.

MR. EDWARDS: But they are being accepted into evidence?

THE COURT: Oh, yes.

MR. TEASDALE: Is there anything left for the defendant to do with regard to that stipulation? Shall we enter into it now?

THE COURT: No, I think you will have to await the pleasure of your client when he takes some position one way or the other about testifying.

MR. TEASDALE: *He's going to testify. I'll tell the Court right now he'll testify.*

THE COURT: We'll take care of that when the time comes." (Emphasis supplied).

Defense counsel then, in colloquy with the court after the State rested, attempted to obtain from the court some commitment as to what the defendant would have to

admit while testifying in order to keep the photographs from the jury. The defense counsel again indicated the defendant would testify and wanted a recess to talk to the defendant. The court steadfastly refused to so indicate and chastised counsel for attempting to obtain an indication from the court as to the questions to be put to the defendant.

Defense counsel was obviously attempting to have his cake and eat it, too, by offering the defendant as a witness and by limiting the testimony of defendant to such agreement with the State's case as would keep the damaging photographs away from the jury.

The defendant did testify, and he attempted to explain the body being out of the car by stating the victim was charging at him, a claim refuted by the wounds in the back. He denied kicking the victim, a claim refuted by the photographs which showed severe damage to the victim's mouth. When the State sought to permit the jury to view the photographs, the defense objected, and the court properly noted that they were now relevant and probative to show the aggression of the defendant and refuted his claim of self-defense and his version of the killing.

As indicated by the above recital of the occurrences at the time the photographs were offered, the trial court did not require anything of the defendant but had simply reserved its ruling. The defendant assumes in his argument that if the defendant had not testified the court would have admitted the photographs for jury viewing—that is not borne out by the record, no statement to that effect appearing at any point in the colloquy between counsel and the court. What the court might or might not have done with respect to a jury view of the photographs if the defendant had remained silent is purely speculative. Based upon the trial court's reluctance to permit them to go to the jury at the time they were offered, it seems fair to infer that the court would not have permitted the jury to view the photographs if the State's oral testimony was not contradicted. The last remark of the court

set forth above indicates that the court was leaving it to the defendant and counsel to make the choice as to whether the defendant would testify. The defendant chose to testify, as his counsel had already indicated he would, and the defendant elected to attempt to refute the oral testimony offered by the State. In those circumstances, the trial court was eminently justified in permitting the jury to view the photographs. The point is without merit.

■ The final point raised by the defendant is totally without merit. No objection or challenge to the array of jurors was made before the jury was sworn, the first mention of this claim being in the motion for a new trial. Such failure to make proper objection to the array of jurors does not preserve the point for review. *State v. Robinson*, 484 S.W.2d 186 (Mo.1972); and also the claim made by the defendant has been ruled adversely to him in *State v. Duren*, 556 S.W.2d 11 (Mo.banc 1977).

Judgment and conviction affirmed.

All concur.